Good morning, Your Honors, and may it please the Court. When Marcus Hayden on February 15, 2012, reported to Lisa Wilson of the United States Probation Department that his phone number was 260-804-9312, he had no idea that those ten digits would prove crucial to a criminal trial against an entirely different defendant, Mr. Moore, based on events that occurred two weeks later on March 2, 2012. What he did know was that probation was likely to use that phone number to contact him, and what he also knew was that lying about that number could subject him to criminal penalties for perjury, could subject him to a prosecution under 18 U.S.C. section 1001 for making a false statement to a federal employee, and could subject him to revocation of his supervised release for failing to follow the directions in giving false statements to his probation officer. So under all of those circumstances, Your Honor, we believe that these statements were trustworthy. We believe that these statements do qualify under the text of Rule 803-6 as business records, and at a minimum, that they qualify under Rule 807 as residual hearsay. The district court erred in concluding otherwise, and so its order excluding that phone number and that report, both of the reports, both the report to Ms. Wilson and the written report in the February 2012 monthly probation report, the court erred in excluding those at Mr. Moore's upcoming trial. We would ask that its judgment be reversed. Your Honors, under Rule 803-6, the text of the rule simply requires that a record of an act, event, condition, opinion, or diagnosis be made at or near the time by or from information transmitted by someone with knowledge. That is met here. The information was written down in one instance by Ms. Wilson, and in the other instance, it was reported by someone with knowledge. The record was kept in the course of regularly conducted activity of the organization. It doesn't have to be, although we call this the business records exception to the hearsay rule, that's a misnomer. It's a record of regularly conducted activity. This wasn't a for-profit business, but certainly it is the regular business of the United States Probation Department to supervise those on probation or supervised release, as this court well knows from many of its recent cases. Making the record was a regular practice of activity. Mr. Hayden was required to fill out a monthly form. He was required to report that on a regular basis. Rule 803-6D is not particularly at issue here. We would have a custodian who would be able to come in and testify to all of those points. And so we come to Rule 803-6E, which is the simple question of whether the opponent, the burden is on the opponent here critically, has shown that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness. I think I've already reviewed in my opening. Well, this statement was a statement by a third party to the probation officer. The probation officer had a duty to file the report. Yes, it is a statement of 803-6A, and what this court and other courts have basically said under those circumstances is under those circumstances, it doesn't just automatically come in. You have to look at other signs and other indicators. This court has frequently looked to verification, but That particular number wasn't verified, but I don't think that when the court says that there has to be verification, the courts have not been looking to say, hey, is somebody from the business going to come in and say, yep, I called and verified that number. In that case, we wouldn't need to get in the hearsay statement. If you look at Zapata itself, which is sort of the first case in the verification, what the witness says there, if you look in the footnote, is the witness testified on the manager of the Hyatt Regency Hotel, and this particular, and we always ask for verification of the person's identity. We do that by asking for either a driver's license or a business card. They didn't testify that they did that in this particular case. They just testified it was their regular pattern, practice, or procedure to do so. In the LaShore case that we cited in the reply brief, they said, well, we make a list of the money that's in our bait money that we give, and we irregularly occasionally double check it and make sure it's right. We don't do that on any regular basis. It all comes down to reliability. It doesn't matter whether it's in a report or not. I think that's right. I think it comes down to reliability, and ultimately what the district court said is, after the fact, this guy committed a bunch of criminal activity, and therefore I don't find anything that he says is reliable. Now, the courts have not taken that course. I think you have to dive much more deeply into the statement. Is there any particular reason why he would have lied? No, there's no reason he would have lied about his probation, who he was meeting face-to-face with, about his number. She could have dialed her desk phone or picked out her cell phone and dialed the number, and if it didn't come back to him, if it came back to some unlisted number or to somebody who said, I have no idea who Marcus Hayden is, she could have instituted proceedings right there. Who is this person? Vera Wilson, is it? Tara Wilson. Tara Wilson, who seems to be her phone, or she answers the phone? I don't know. No, she didn't answer the phone. There is a record that's come in. It's actually, I believe, from some kind of law enforcement database that links the number to her. So that's somehow in either the phone company's records or some other record that has been maintained. That's, again, I guess another business record. But that is all that we know. I mean, there are multiple possibilities about that as well, Your Honor. One possibility is that the record of the database is incorrect. One possibility is that she's scared out of her wits and doesn't want to get involved in this kind of match and isn't telling the truth. We would only know that by putting her on the witness stand and examining her. We don't know that. What we do know, and what the record clearly shows in this case, is that the number is connected to Mr. Hayden. I mean, we need to get that information in a trial in order to convict Mr. Moore, but if you look at the complete record and the first number that he gives his mother's number, Mr. Moore is calling that number. Then, around the same time that he goes to Ms. Wilson and says, my new number is 804-9312, suddenly that's the number that's being called. And then, when that number goes dark and the new number comes in, he starts calling that number. Now, of course, he's calling... But in the context of the business record argument, you want us to look at that behavior before and after he gave her the number, right? Well, I think that the court can look to that. I think... So then, why was the district court... I'm just curious, because you're saying the district court shouldn't have looked at the fact that he fled and all... I mean, his serious issues with law enforcement. That was something post him telling the probation officer that number, right? Well, let me correct my statement, Your Honor. The only point where I think that the post behavior does come into play is simply looking at the corroboration, which is one of the points that this court has cited under the 807 analysis. But what I do think, and what I tried to stress at the beginning part of my argument, is I do think that the pre-behavior is what's critical. The fact is, Mr. Hayden knew that they were going to call this number, because they had called the number that he had previously given them. It was his mother's number, and they had relayed messages to him through that number. So that's very different from the hotel cases, or the Western Union cases, or the Circuit City case that we cited in our brief, where essentially, you go and you do a one-time transaction with somebody, you rent a hotel room, or you send money, and the company really doesn't care who you are. All they care is you gave them money, and they're going to go do what they're going to do, and you go on your merry way. And they wrote your name down for whatever reason, but they're not going to use it. This is an ongoing relationship and an ongoing transaction, and under 18 U.S.C. 36032, probation has an ongoing duty to monitor. But I mean, even if the court were to disagree on the business records exception, on the Rule 807 exception, as we've stated as well, there's a whole line and pattern of factors that the courts generally look to, and the district court just threw everything in the, I find that he's not truthful. And the only reason that he gave for finding that he wasn't truthful is because he's a felon, and primarily based on his later behavior, his later violent behavior, admittedly violent behavior. But I mean, in my line of work, I've met violent individuals whose grandmothers taught them never to tell a lie. Those things sometimes go in common, but I've also met people who are liars who aren't violent. And all I mean to say is I don't think you can pin everything on that when every other factor points the other way. This statement was given voluntarily, under penalty of perjury. There was no motive for Mr. Hayden to lie. It clearly reflects his personal knowledge. He never recanted it. And under the 807 test, he's unavailable. We have no other way to get this information. And that's where we are. I see that I'm into my rebuttal time, so I would like to resolve a little bit. Okay. Well, thank you, Mr. Haller. Mr. Stevens? Good morning, Your Honors. Good morning. I'll grant Mr. Hayden, or Mr. Haller, one thing. Marcus Hayden is dead. He can't come into court and testify, was this your number or wasn't this your number? Certainly, probation has records that show that he told them that the 9312 number was his number. The question is, is that sufficient to get around the hearsay exceptions? The business record does, according to the case law that has developed in this and other circuit, have some exceptions for third-party statements. By and large, those statements are not... I don't think the business records, business is important. What I think is impressive is that he doesn't have a motive to lie about his number, Hayden, the 9312. And then there's this extensive calling of that number by Moore, which suggests a close relationship among them. Why isn't that persuasive? Why would Moore be calling that number so incessantly? Well, Mr. Haller says that Marcus Hayden can't testify as to those conversations or what those conversations are. I also can't bring Marcus Hayden into court and ask him, was that your number? Were you using that number? Were you talking to... Why was Moore making so many calls to that number? I think we have to look at the nature of cellphones. Cellphones are portable instruments that can and often are used by other people. The cell phone that Marcus Hayden gave the number for belonged to somebody else. We don't know who Mr. Moore was calling. We know that he was calling that number. We don't know who was on the other end. The only evidence as to who was on the other end is Marcus Hayden's statement that 9312 was his number. There's no evidence... But if he didn't have a motive to lie to give a fictional number to the probation service, they would eventually catch on to that. So if he didn't have a motive to lie, and it was his number, and Moore called that number incessantly, why isn't the natural inference that he was talking to Hayden? I think we have to look at the whole record of Marcus Hayden. Number one, when he first went on supervision, he gave his mother's home number. Was that because he didn't want probation to be able to contact him directly on his number? Was he trying to hide? We don't know. We can't ask him that. But that turned out to be his mother's number. That was his mother's number. So what he gave the probation turned out to be an accurate number that had a connection to him. And messages... And he was contacted through that number. Messages were relayed through his mother to him. And he knew that because he somehow got back to the probation office. And we have no... After it was relayed by the mother. Because otherwise we wouldn't know how that happened, right? That's correct. So he got back to probation, so he knew that the number that he'd given the probation officer was a number that he could be contacted at. But we have no way of knowing that the same thing wouldn't happen with a 9-3-1-2 number. No, no, you don't understand what Judge Williams was saying. He knew when he gave, or after he gave the mother's number, he knew that probation was going to call him occasionally. And if he gives a fake number, he can get into serious trouble. So why would he do that? What's his motive for giving a fake number? The number 9-3-1-2, for instance, and I'm only proposing a hypothesis, might have been a friend's number through which messages could have been relayed. Right, but the question is reliability. So he knows that the probation office is going to rely on what he's given. Well we don't know that because probation never tried to contact him at any... But he gave the mother's number. So we know when the court is looking at all these factors, that's one, that's a factor that can be very critical when you're trying to figure out at the time he gave the number to probation, could we rely on what he said to the probation officer in order to make it fall into the catch-all provision, the residual provision. But he could have just as well done the same thing he did with his mother's number. And for instance, if that were in fact Tara Wilson's phone, and she says it isn't, we don't know whether it is or not. We know that the records show that it was registered in her name. Calls that number could simply be answered, he's not here now, can I give him a message? Hold on. What's being kept out here? Are we keeping out the fact that he gave this number to probation, or are we keeping out the fact that he said, this is my number? Because it seems to me here, the situation is pretty much the same for your client either way. There's a number given to probation, probation made a record of it in their notes, here's what it says, come to find out a couple of weeks later, your client is making a dozen calls to that number. I think the critical distinction is if we're admitting this simply for the fact that probation was given that number, I'm going to be asking for a limiting instruction that says you can't consider the truth of that statement. A lot of good a limiting instruction will do you. I'm sorry? A lot of good a limiting instruction does. And even if it did some good, let's think about what the instruction would be. You can't consider it for the truth of, this is his number, right? But by this time the jury will have heard your client called it a dozen times on the day that he claimed that the gun had been stolen, right? And the danger is they're going to assume that regardless of the limiting instruction, this is his number. And if it's not being offered for the truth of, this is his number. But that's a reasonable assumption that they can draw. What I'm saying to you is, I think that's a reasonable assumption that they can draw even without assuming that the number in that he gave probation was his. In other words, he gave a number to probation. Nobody's really arguing with that. This is the number he gave to probation. Weeks later it gets called repeatedly. The jury is likely to draw the conclusion that he had something to do with your client. And then we get into the whole issue of, this is offered for the truth of, this is Marcus Hayden's number. And that's where the hearsay problem arises. And that's what brings the hearsay exception. But a lot of hearsay is admissible. It just has to be reliable. It doesn't seem like a textbook case for the residual exception. I mean, even putting aside all the dispute about regularly, you know, record of a regularly conducted business, what about just saying it's an 807? 807, as this court and many other courts have said, is to be very rarely applied. No, it's not rarely applied. Even the advisory committee said we don't intend to create... Everybody knows that hearsay is often, you know, important in a case because maybe there isn't much else. Well, this is not a statement that's made under penalty of perjury. There was a warning that you might be subject to... There was a warning. I thought there was a warning at the bottom that it would be a false statement. There was a warning that it was a false statement. And identified the code provision, I guess, 1001. And it could be prosecuted under 1001, false statements. But it could not be prosecuted as perjury. It is not a statement under oath. But saying that you could be prosecuted for lying is an incentive for one to tell the truth when you're looking at the whole context of this and whether it falls into the residual clause, right? Well, certainly the fact that a person's been warned is a factor. Yes, that one is at risk if one lies. And I would concede that there was that risk. But it's not a statement made under penalties of perjury, so it doesn't carry the same impact that that kind of a statement would make. There's no corroboration that that is Marcus Hayden's number. And his motivation for giving somebody else's number is, or a made-up number that happened to be called later on. What was his motivation? Well, we know, for instance, from the monthly reports that he filed, that he stated that his mother was living with him. And yet when they attempted to arrest him, he was living with his girlfriend. That's a lie. We know that he lies on those reports. So we know that he's not entirely truthful on his reports. Some of the stuff he says is true, some of it isn't. Some of it's not. But as to these phone numbers, though, as you agree, he had been contacted on some of these other phone numbers. They had been able to contact him. So, I mean, you can make a distinction between where he's living and the phone. Because one might want to make sure the probation officer could catch you on your cell phone and not let the probation officer know where you live. So you could be honest on some and not on others. But unlike Zapata and some of the other cases, there is no corroboration. There is no verification. There is no, nothing beyond. And I suppose, since he's been warned under 1001, might this, his giving that information be a statement against his interests? I think, of course, a confrontation would come into play. But I think any time an agent goes out and makes an investigation, the possibility of a 1001 prosecution is there. And to hold simply that a 1001 prosecution create, the risk of a 1001 prosecution creates an 807 exception, is to open up a whole new area of law that is going to dramatically expand the hearsay exceptions. Okay. Well, thank you very much, Mr. Stephens. Mr. Holler? Thank you, Your Honors. Just a couple of points of clarifications. I mean, I don't think that there's any evidence that the defendant ever lied on any of these forms. Most defendants when they're released from imprisonment don't have cell phones while they're in prison. So their first contact number is going to be a home phone number until a couple months in, they get a cell phone, which is what Mr. Hayden did here. The fact that on April, I believe it was April 9th, the defendant was at his girlfriend's house. He had absconded at that point. He had, I'm sorry, Mr. Hayden. I confuse Hayden and Moore occasionally. But Mr. Hayden, the fact that Mr. Hayden wasn't living with his in January and February that he was living with her, that doesn't mean he wasn't. Lots of defendants try to comply with supervised release, then they fall away. So in February, he was living with his mother. In February, his phone number was 9312. By April, he had ditched that phone and he had left his mother. Nothing about this shows any falsehoods. All of the factors as we reviewed and gone through, at a minimum under 807, support finding that this is a textbook case of residual hearsay. Honestly, it makes no difference whether it's rarely, almost never, or almost always applied. It should be applied here. For those reasons and the others expressed in our brief, we would ask that the judgment or the order of the district court be reversed and the case be remanded so that this evidence may be used at Mr. Moore's trial. Thank you. Okay, thank you very much to Mr. Howler and of course to Mr. Steven. And you were appointed, were you not? Yes, Your Honor. Yes, well we thank you for your efforts. Thank you, Your Honor. And the court will be in recess until tomorrow, I guess. Thank you, Your Honor.